# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

_____

## CIVIL ACTION NO. 17-2411-TDC

_____

## PAUL MARTIN HURST

*Petitioner*

v.

## RICKY FOXWELL and
## BRIAN FROSH.

*Respondents.*

_____

## SECOND SUPPLEMENTAL PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2254 BY A PERSON IN STATE CUSTODY AND SUPPORTING MEMORANDUM OF LAW

_____

Michael E. Lawlor
Nicholas G. Madiou
Brennan, McKenna & Lawlor, Chttd.
6405 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
301-474-0044
Counsel for Petitioner

## TABLE OF CONTENTS

INTRODUCTION……..………………………………………………3

EXHIBITS...…..………………………………………………....4

PROCEDURAL HISTORY……….………………………………...6

RELEVANT FACTS…..…………………………………………9

ARGUMENT…..……………………………………………...12

   A. Standard of Review Governing Petitions for
      Writ of Habeas Corpus……………………………………………12

   B. The Petitioner Received Ineffective Assistance Of Counsel
      During The Plea Phase Of His Case Based On Trial Counsel
      Misadvising Petitioner That a Suspended Life Sentence Did Not
      Require Gubernatorial Approval For Purposes of Parole, And
      Failing to Correct The Trial Court When It Also
      Misadvised Petitioner on the Subject………..…………………...14

       1. Relevant Law………………………………….………...14

       2. Deficient Performance..........................................................16

       3. Prejudice...............................................................................21

CONCLUSION…………………………………………………24

CERTIFICATE OF SERVICE…………………………………...25

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **PAUL MARTIN HURST** | : | |
| | : | |
| **v.** | : | |
| | : | **Case No. 17-cv-2411-TDC** |
| | : | |
| **RICKY FOXWELL and** | : | |
| **BRIAN FROSH.** | : | |
| | : | |
| | : | |

_____

**SECOND SUPPLEMENTAL PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. §2254 BY A PERSON IN STATE CUSTODY AND SUPPORTING MEMORANDUM OF LAW**

Petitioner, Paul Martin Hurst, Inmate No. 437-677, presently incarcerated at the Eastern Correctional Institution in Westover, Maryland, through his counsel, Michael E. Lawlor, and Nicholas G. Madiou, Brennan, McKenna & Lawlor, Chtd., submits this supplemental Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, and supporting Memorandum of Law.

**INTRODUCTION**

Mr. Hurst pleaded guilty to attempted first degree-murder as a result of erroneous advice provided by his trial counsel, and the state trial court, regarding the requirement of gubernatorial approval for parole on any sentence of life in the State of Maryland. During his plea colloquy, Mr. Hurst was misadvised on this point by the trial court. At the post conviction hearing

below, trial counsel admitted to being misinformed on the law on this point, and thus failed to correct the trial court when Mr. Hurst was misadvised about the consequences of his plea on the record. Trial counsel's performance in this regard was deficient under the Sixth Amendment to the United States Constitution. Mr. Hurst was prejudiced by this failure because, but for trial counsel's error, there is a reasonable probability that Petitioner would not have pleaded guilty in this case. The state of parole eligibility for those serving life sentences in Maryland is such that no meaningful opportunity for parole exists for "lifers" due to historical inaction on the part of Maryland Governors. This point highlights the prejudice that resulted in this case. Under these circumstances, a new trial is warranted.

## EXHIBITS

Respondents previously filed exhibits, numbered 1 through 8, attached to its Response to Petition for Writ of Habeas Corpus filed on November 3, 2017 (ECF No. 4).

Respondents filed, in compliance with the Order of this Court reflected at ECF No. 5, an additional transcript as a supplemental exhibit in this case. *See* ECF No. 6. This supplemental exhibit will be cited within this memorandum by reference to its ECF docket number.

This Memorandum will refer to the Respondents' numbered exhibits 1 through 8, as well as exhibits 9 through to 12, which are attached to this pleading. For the Court's convenience, the list of exhibits is reproduced below:

Exhibit 1: Docket Sheet for *State of Maryland v. Paul Hurst*, case no 22-K-14-652 (Wicomico County).

Exhibit 2: Transcript of Plea Hearing – March 20, 2015.

Exhibit 3: Transcript of Sentencing Hearing – April 30, 2015.

Exhibit 4: *Pro Se* Petition for Post-Conviction Relief, filed March 28, 2016, with *pro se* supplemental petition, filed June 6, 2016.

Exhibit 5: Supplemental Petition for Post-Conviction Relief, filed September 6, 2016.

Exhibit 6: Statement of Reasons and Order of Court, filed March 13, 2017.

Exhibit 7: Application for Leave to Appeal the Denial of Post-Conviction Relief, filed April 4, 2017, with supplement filed April 14, 2017.

Exhibit 8: Unreported Opinion of the Court of Special Appeals summarily denying Application for Leave to Appeal Denial of Petition for Post-Conviction Relief, filed July 11, 2017.

Exhibit 9: Motion to Reopen Post-Conviction Case, filed March 23, 2020.

Exhibit 10: Order denying Motion to Reopen Post-Conviction Case, dated May 22, 2020.

Exhibit 11: Application for Leave to Appeal from the Denial of Motion to Reopen Post-Conviction Case, filed June 16, 2020.

Exhibit 12: Unreported Per Curiam Opinion of the Court of Special Appeals summarily denying leave to appeal from a denial of petition for post-conviction relief dated September 9, 2020.

## PROCEDURAL HISTORY

On March 20, 2015, Mr. Hurst pleaded guilty to attempted first-degree murder. *See* Exhibit 2. Thereafter, the State of Maryland agreed to dismiss all remaining charges, and recommend a sentence of life imprisonment with all but 40 years suspended. *Id.*

On April 30, 2015, the Circuit Court for Wicomico County, Maryland sentenced Mr. Hurst to life imprisonment with all but 40 years suspended. *See* Exhibit 3.

On March 28, 2016, Mr. Hurst filed *pro se*, a Petition for Post-Conviction Relief. Exhibit 4. On June 6, 2016, Mr. Hurst, again *pro se*, filed a supplement to his post-conviction petition. Exhibit 4.

On September 6, 2016, Mr. Hurst, through counsel, filed a supplemental Petition for Post-Conviction Relief. Exhibit 5. In this supplemental petition, Mr. Hurst raised the following issues:

(1) Trial counsel was ineffective for failing to file a motion for modification of sentence;

(2) Mr. Hurst's guilty plea was not entered knowingly, intelligently, and voluntarily since he was misadvised by the court that gubernatorial approval was not required to be paroled from a suspended life sentence; and

(3) Trial counsel was ineffective for not correcting the circuit court regarding the misadvice on parole eligibility and the necessity of gubernatorial approval.

On January 13, 2017, the circuit court held a hearing on Mr. Hurst's Petition for Post-Conviction Relief, after which it granted Mr. Hurst the right to file a belated motion for modification of sentence, but denied his remaining claims. *See* Exhibit 7.

Mr. Hurst filed a *pro se* application for leave to appeal from the denial of post-conviction relief on April 4, 2017, and a supplemental application for leave to appeal on April 14, 2017. *See* Exhibit 7.

On July 11, 2017, the Court of Special Appeals denied Mr. Hurst's application for leave to appeal. *See* Exhibit 8.

On August 22, 2017, Mr. Hurst filed in this Court a Petition for Writ of Habeas Corpus. Thereafter, this Court appointed undersigned counsel to represent Mr. Hurst and file an amended petition. On March 1, 2019, Mr. Hurst, through undersigned counsel, filed a supplemental petition for writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. On April 10, 2019, the Government filed a response in opposition to Mr. Hurst's supplemental petition.

On July 24, 2019, Mr. Hurst filed a Motion to stay and hold in abeyance the proceedings in this Court on Mr. Hurst's Petition for a Writ of Habeas Corpus in abeyance pending further litigation in the Circuit Court for Wicomico County, Maryland and the Court of Special Appeals of Maryland.

On January 23, 2020, this Court granted Mr. Hurst's motion to stay proceedings in this Court while Mr. Hurst pursued further post-conviction litigation in Maryland state court.

On March 23, 2020, Mr. Hurst filed a Motion to Reopen Post-Conviction Case in the Circuit Court for Wicomico County, Maryland. Exhibit 9. On May 22, 2020, the Court denied Mr. Hurst's Motion. Exhibit 10.

On June 16, 2020, Mr. Hurst filed an Application for Leave to Appeal from the Denial his Motion to Reopen Post-Conviction Case. Exhibit 11.

On September 9, 2020, the Court of Special Appeals denied Mr. Hurst's Application for Leave to Appeal in an Unreported Per Curiam Opinion. Exhibit 12.

## RELEVANT FACTS

On March 20, 2015, Mr. Hurst pleaded guilty to attempted first-degree murder. *See* Exhibit 2. During the plea colloquy, the trial court misadvised Mr. Hurst regarding the need for gubernatorial approval for parole on a suspended life sentence.

Specifically, the trial court stated:

| | |
|---|---|
| The Court: | Furthermore, the State is not recommending a sentence of life, straight life, what they're recommending is that the Court impose a sentence of life and suspend all but 40 years. Do you understand that sentence? |
| The Defendant: | Yes, ma'am . |
| The Court: | So because it is not a life sentence, because there's a suspended aspect to the sentence, it would not require a signature by the Governor in order to be released at the time for mandatory release or parole. Do you understand that? |
| The Defendant: | Yes, ma'am. |
| The Court: | This is a crime of violence, which means |

> that you are required to serve fifty percent of any sentence before you are eligible for parole. Do you understand that?

The Defendant:    Yes, ma'am.

The Court:    So using simple math, if there is a 40-year active sentence, you would be presumably required to serve fifty percent of that sentence before you would be eligible for parole. Do you understand that?

The Defendant:    Yes, ma'am.

Exhibit 2, at 9-10.

On April 30, 2015, the Circuit Court for Wicomico County sentenced Mr. Hurst to life imprisonment with all but 40 years suspended. *See* Exhibit 3.

At a hearing before the state court on Mr. Hurst's Petition for Post-Conviction Relief, the State of Maryland conceded that the advisement that Mr. Hurst received regarding the requirement of gubernatorial approval for parole was an incorrect statement of law. ECF No. 6, at 9-10.

During the post conviction hearing, trial counsel testified, in relevant part, as follows:

Q:    And during your discussions with the Petitioner with respect to the plea offer, did you discuss parole eligibility?

A:    Yes.

Q:     During the context of your discussions, did anything about the Governor come up?

A:     The only discussions we would have had about Gubernatorial approval for release would have been if he received a life sentence. I did not have any discussions with him or inform him if Gubernatorial approval was required if he was  sentenced to a numerical sentence.

Q:     And was [sic] there any conversations about parole eligibility as to a crime of violence?

A:     Yes.

Q:     And what was that?

A:     That he would be required to serve half of the given time before he would be eligible for parole.

ECF No. 6, at 23. Trial counsel further testified that at the time of her representation of Mr. Hurst in this case, she did not believe that gubernatorial approval was required for a life sentence with a term of years suspended. ECF No. 6, at 25. Trial counsel advised Mr. Hurst that gubernatorial approval for parole was required on a sentence of "straight life." ECF No. 6, at 26.

**ARGUMENT**

### A. Standard of Review Governing Petitions for Writ of Habeas Corpus

The standard by which a federal court reviews a habeas corpus petition originating from a state court conviction is codified at 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the United States Supreme Court addressed the standard of review to be applied by federal courts in assessing petitions for habeas corpus relief filed by a state prisoner. The majority, addressing first the "contrary to" language of §2254(d)(1), noted that a state court judgment would be contrary to clearly established federal law if the state court, for example, applied the wrong legal standard in judging a claim of ineffective assistance of trial counsel or denied relief in a case that was factually indistinguishable from a prior holding of the Supreme Court. *Id.* at 405. For example:

> If a state court were to reject a prisoner's claim of ineffective assistance of counsel on the grounds that the prisoner had not

established by a preponderance of the evidence that the result of his criminal proceeding would have been different, that decision would be diametrically different, opposite in character or nature, and mutually opposed to our clearly established precedent because we held in *Strickland* that the prisoner need only demonstrate a reasonable probability that. . . the result of the proceeding would have been different.

*Id.* at 405-406; *see also Rose v. Lee*, 252 F.3d 676, 689 (4th Cir. 2001) (state court's application of incorrect burden of proof on ineffective assistance of counsel claim was "contrary to" clearly established Supreme Court law).

Next, addressing the "unreasonable application" language of the statute, the Court held that "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case, a federal court applying §2254(d)(1) may conclude that the state-court decision falls within that provision's 'unreasonable application' clause." *Williams,* 529 U.S. at 409. The Court next sought to define the exact meaning of an "unreasonable application of clearly established Federal law." The Court held, "stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409.

A federal habeas court may grant a writ of habeas corpus "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id.* at 365; *see also Harrington v. Richter*, 131 S.Ct. 770 (2011) (stating that the question is "whether fairminded jurists could disagree on the correctness of the state court's decision"). Where a state court unreasonably applies clearly established Supreme Court law, this Court must review the claim *de novo. See Lee*, 252 F.3d at 689-90.

A state court's factual determinations are presumed correct, but the presumption may be rebutted by clear and convincing evidence. *See Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003). A habeas court must assess the validity of the claim based on holdings of the Supreme Court as of the time of the state court decision. *See Williams*, 529 U.S. at 412; *Frazer v. South Carolina*, 430 F.3d 696, 703 (4th Cir. 2005).

**B. The Petitioner Received Ineffective Assistance Of Counsel During The Plea Phase Of His Case Based On Trial Counsel Misadvising Petitioner That a Suspended Life Sentence Did Not Require Gubernatorial Approval For Purposes of Parole, And Failing to Correct The Trial Court When It Also Misadvised Petitioner on the Subject.**

**1. Relevant Law**

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. The United States Supreme Court "has recognized that 'the right to counsel is the

right to the effective assistance of counsel.'" *Strickland v. Washington*, 466

U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771,

n.14 (1970)).

In order to "prevail on an ineffective assistance claim, a petitioner must

establish that (1) counsel's performance was deficient and (2) there is a

reasonable probability that the deficiency prejudiced the defense."

*Merzbacher v. Shearin,* 706 F.3d 356, 363 (4th Cir. 2013) (citing *Strickland,*

466 U.S. at 694).

To establish *Strickland*'s prejudice requirement, Petitioner must "show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland*,

466 U.S., at 694. The "reasonable probability" that Petitioner must show to

establish prejudice is lower than a preponderance of the evidence, or the

"more likely than not" standard.  *Williams. v. Taylor*, 529 U.S. 362, 405-06

(2000) (O'Connor, J., concurring).


## 2.  Deficient Performance

The Supreme Court has made clear that, "[d]efendants have a Sixth

Amendment right to counsel, a right that extends to the plea bargaining

process. During plea negotiations defendants are entitled to the effective

assistance of competent counsel." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citations and internal quotation omitted). In *Missouri v. Frye*, the Court explained that, "plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process[] . . . that must be met to render the adequate assistance of counsel that the Sixth Amendment requires. . . ." 566 U.S. 133, 143 (2012).

In *Lafler*, trial counsel's performance was presumed deficient for failing to provide accurate advice during the plea bargaining phase. 566 U.S. 156. The Supreme Court found it deficient to erroneously advise a client that he could not be convicted for assault with intent to murder because the victim was shot below the waist. *Id.* In this case, as in *Lafler*, trial counsel performed deficiently by providing inaccurate advice to Petitioner.

Here, trial counsel rendered ineffective assistance by incorrectly advising Petitioner and accepting as true the trial court's incorrect statement on the record, that gubernatorial approval would not be required for parole on a suspended life sentence. During the post-conviction hearing, trial counsel admitted that her understanding of the law at the time of advisement was incorrect. The parties below conceded that such advice was incorrect.

During the plea colloquy, the trial court also misadvised Petitioner that in Maryland, gubernatorial approval was not required to be paroled on a suspended life sentence. Specifically, the trial court stated:

> The Court:    Furthermore, the State is not recommending a sentence of life, straight life, what they're recommending is that the Court impose a sentence of life and suspend all but 40 years. Do you understand that sentence?
>
> The Defendant:    Yes, ma'am.
>
> The Court:    So because it is not a life sentence, because there's a suspended aspect to the sentence, it would not require a signature by the Governor in order to be released at the time for mandatory release or parole. Do you understand that?
>
> The Defendant:    Yes, ma'am.

Exhibit 2, at 9-10.

Trial counsel was also under the false understanding that "straight life" was somehow different that a suspended life sentence for parole purposes. Trial counsel advised Mr. Hurst that gubernatorial approval for parole was required on a sentence of "straight life." The plea offer in this case was a recommendation from the State for a sentence of life suspend all but forty years. Under that scenario, both trial counsel and the trial court misunderstood the law, and so misadvised Petitioner that gubernatorial approval was not required for a suspended life sentence.

17

Under the Maryland rules "an inmate serving a term of life imprisonment may only be paroled with the approval of the Governor". Maryland Code Ann., Corr. Serv. Art., § 7-301. The statute makes no distinction between a person serving "straight life" and those serving a suspended life sentence. The Court not only misadvised Petitioner regarding the need for gubernatorial approval, it also misadvised Petitioner that he would be eligible for parole after serving fifty percent of the executed portion of his sentence.

| | |
|---|---|
| The Court: | This is a crime of violence, which means that you are required to serve fifty percent of any sentence before you are eligible for parole. Do you understand that? |
| The Defendant: | Yes, ma'am. |
| The Court: | So using simple math, if there is a 40-year active sentence, you would be presumably required to serve fifty percent of that sentence before you would be eligible for parole. Do you understand that? |
| The Defendant: | Yes, ma'am. |

Exhibit 2, at 10.

This advice was clearly at odds with the law of Maryland at the time of guilty plea. "[A]n inmate who has been sentenced to life imprisonment is not eligible for parole consideration until the inmate has served 15 years or the equivalent of l5 years considering the allowances for diminution of the

inmate's term of confinement." Md. Code. Ann., Corr. Serv. Art., § 7-301 (d) (l). The law of Maryland makes no distinction between a person serving straight life and one serving a suspended life sentence. Maryland case law is also clear on this point. "[W]here the sentence imposed was life imprisonment, notwithstanding that execution of a part of that sentence has been suspended…, the inmate 'has been sentenced to life imprisonment' and not merely to the unsuspended part of it when he must serve in confinement." *Hanson v. Hughes*, 52 Md. App. 246, 253 (1982).

Despite the clear state of the law on this point, trial counsel misadvised Petitioner on this critical point. Making matters worse, trial counsel failed to correct the trial court when, during the plea colloquy, the court misadvised Petitioner regarding the need for gubernatorial approval on a suspended life sentence.

The post-conviction court rejected Petitioner's ineffective assistance of counsel claim, finding that trial counsel was not deficient. The court reasoned that because parole eligibility was not a direct consequence of the plea, Petitioner did not need to be informed of that information before entering his guilty plea. *See* Exhibit 6, at 7-8. It therefore followed, the court concluded, that trial counsel had not provided deficient performance by providing erroneous advice to Petitioner before he entered his guilty plea regarding the

need for gubernatorial approval for parole on a suspended life sentence.

While parole eligibility is a collateral consequence of Petitioner's guilty plea, the incorrect advice of law on this point renders trial counsel's representation ineffective. The Third Circuit summarized the relevant law in *Meyers v. Gillis*, 93 F.3d 1147 (3d Cir. 1996), where it stated:

> It is well settled that the Constitution does not require that a defendant be provided with information concerning parole eligibility. . . . Thus, if Meyers were merely alleging that his constitutional rights were violated because he did not receive information concerning his eligibility for parole, his claim would be entirely without merit.
>
> However, several federal appellate courts have suggested or held that, where parole eligibility information is provided to a defendant by the state or the defendant's attorney and that information is grossly erroneous, a defendant may be entitled to habeas relief where he can show that he would not have pleaded guilty had accurate information been provided.

*Id.* at 1153 (internal citations omitted). *See also Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir. 1979) (holding that "though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel").

For these reasons, the post-conviction court's conclusion that trial counsel's performance was not deficient is contrary to or an unreasonable

application of the standards in *Strickland.*

### 3. Prejudice

After concluding that trial counsel's performance was not deficient, the post-conviction court concluded without any analysis whatsoever that Petitioner had not met the prejudice prong of *Strickland.* Exhibit 6, at 8 ("However, even assuming, *arguendo*, that Trial Counsel's failure to correct the Court's misinformation was deficient, the Court cannot find that there was prejudice). Under these circumstances, this Court should determine the issue of prejudice *de novo. See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (stating that "our review is not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis); *Lenz v. Washington*, 44 F.3d 295, 302 (4th Cir. 2006) (stating that "[b]ecause there is no state court judgment on the merits, we review de novo").

In order to demonstrate prejudice, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S., at 694. However, as the Supreme Court in *Lee* recognized:

> [w]hen a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain. That is

> because, while we ordinarily apply a strong presumption of
> reliability to judicial proceedings, we cannot accord any such
> presumption to judicial proceedings that never took place.

*Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (*citing Rose v. Flores-

Ortega*, 528 U.S. 470, 482-83 (2000) (internal quotation marks omitted).

> We instead consider whether the defendant was prejudiced by the
> "denial of the entire judicial proceeding ... to which he had a
> right." *Flores-Ortega*, 528 U.S., at 483. As we held in *Hill v.
> Lockhart,* when a defendant claims that his counsel's deficient
> performance deprived him of a trial by causing him to accept
> a plea, the defendant can show prejudice by demonstrating a
> "reasonable probability that, but for counsel's errors, he would
> not have pleaded guilty and would have insisted on going to
> trial." 474 U.S., at 59.

*Id.*; *see also Ross v. Wolfe*, 942 F. Supp. 2d 573, 584-85 (D.Md. 2013)

(granting habeas relief where petitioner "has demonstrated he received

ineffective assistance of counsel, and his guilty plea, which was induced by

his counsel's material misadvice and misrepresentations, was not a voluntary,

knowing, or intelligent plea").

In this case, Petitioner demonstrated that but for trial counsel

misadvising Petitioner, and failing to correct the court's misrepresentation

about his parole eligibility, there is a reasonable probability that Petitioner

would have pleaded not guilty and proceeded to trial.

It is abundantly clear from the record that Petitioner did not understand

that he would still be serving a life sentence for parole purposes, even if he

was sentenced to life with a term of years suspended. Petitioner was led to believe by his counsel that he was not serving a life sentence. The consequence of this misadvice is enormous given the state of Maryland's parole system for individuals serving life sentences.

Since the early 1990's, former Maryland Governor Parris Glendening instituted a policy to deny parole for individuals serving life sentences for violent crimes - with the exception of those qualifying for medical parole. Successive Maryland governors have honored this policy, to date.  Only one prisoner has been released on parole since 1995.  That prisoner – an adult burglar given a life sentence as a recidivist and suffering from lung cancer – was released to a nursing home by Governor Larry Hogan in the fall of 2015.  No other lifer has been released on parole since at least 1994 and no lifer serving a sentence for a violent crime has been paroled.  The Maryland Parole Commission has recommended, on average, fewer than 2 prisoners per year for parole release since 1995.  In many years, not a single Maryland lifer was recommended for release.  The lack of a meaningful opportunity for release makes sentences of life in Maryland a *de facto* without-parole sentence.

The clear import of counsel's misadvice, and the failure to correct the trial court during Petitioner's guilty plea, is that Petitioner believed a

suspended life sentence did not require gubernatorial approval for parole. Mr.

Hurst has affirmed that but for the ineffective assistance of trial counsel, he

would not have pleaded guilty and instead insisted on going to trial in this

case. *See* Exhibit 9 (with attached Affidavit of Truth signed by Mr. Hurst

March 5, 2020). Under these circumstances there is a reasonable probability

that but for this erroneous advice, Petitioner would not have pleaded guilty

and instead proceeded to trial.

## CONCLUSION

For the foregoing reasons, Mr. Hurst prays that this court will grant his

Petition for a Writ of Habeas Corpus, reverse his convictions and sentences

and remand his case to the state court for a new trial.  In the alternative, Mr.

Hurst prays that this Court will hold an evidentiary hearing on the matters

raised in his Petition.

Respectfully submitted,

s/_____
Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane
Suite 700
Greenbelt, Maryland  20770
301.474.0044

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 9, 2020, a copy of the foregoing was sent to the Respondents, via ECF.

s/_____
Michael E. Lawlor