## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

PAUL MARTIN HURST,

      Petitioner,

      v.

WALTER WEST, *Warden*, and
BRIAN E. FROSH, *The Attorney General of
the State of Maryland*,

      Respondents.

Civil Action No. TDC-17-2411

## MEMORANDUM OPINION

Petitioner Paul Martin Hurst, an inmate at the Eastern Correctional Institution ("ECI") in Westover, Maryland, has filed a self-represented Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his conviction and sentence after he pleaded guilty to attempted first-degree murder in the Circuit Court for Wicomico County, Maryland. Court-appointed counsel has filed a Supplemental Petition, and the matter is now fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"); D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DISMISSED and DENIED.

## BACKGROUND

### I.   Conviction and Sentence

On August 25, 2014, Hurst was indicted in the Circuit Court for Wicomico County ("the Circuit Court") on charges of attempted first-degree murder, attempted second-degree murder,

first-degree assault, second-degree assault, reckless endangerment, and two counts of wearing and carrying a dangerous weapon with the intent to injure. The charges arose from an incident on the night of August 3, 2014, and continuing into the early morning hours of August 4, in which Hurst and his co-defendant punched, kicked, and stomped on another individual, and also beat him with a stick and a shovel. The victim suffered a broken nose, broken ribs, internal bleeding, and lacerations of his liver and spleen. Hurst and his co-defendant also attempted to cut off a tattoo from the victim's arm and, after failing, tried to burn it off by pouring lighter fluid on the victim's arm and setting it on fire, causing third-degree burns. After he was taken to a hospital, the victim was treated for life-threatening injuries, underwent surgery, and had his burned arm amputated.

On March 20, 2015, the Circuit Court held a guilty plea hearing for Hurst, during which the following colloquy took place:

> THE COURT: Do you understand what the State would have to prove for you to be found guilty of [attempted first-degree murder]?
>
> THE DEFENDANT [HURST]: Yes, ma'am.
>
> THE COURT: Now, I'm told the maximum penalty is life in prison. My understanding from the State and defense is that, in exchange for your plea of guilt[y] to count 1, the remaining charges, second degree murder, first degree assault, second degree assault, reckless endangerment, dangerous weapon wear, carry and with intent to injure, would be dismissed by the State. Do you understand that?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Furthermore, the State is not recommending a sentence of life, straight life, what they're recommending is that the Court impose a sentence of life and suspend all but 40 years. Do you understand that sentence?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: So because it is not a life sentence, because there's a suspended aspect to the sentence, it would not require a signature by the Governor in order to be released at the time for mandatory release or parole. Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  This is a crime of violence, which means that you are required to serve fifty percent of any sentence before you are eligible for parole.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  So using simple math, if there is a 40-year active sentence, you would be presumably required to serve fifty percent of that sentence before you would be eligible for parole.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Is that how you wish to proceed, by way of that plea agreement?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  This is not a binding plea agreement, which means the Court is not confined to impose the sentence recommended by the State.  I can impose a lesser sentence more favorable to the defense.  I can impose a greater sentence up to and including the maximum penalty of life.  And if I were to do that you would not be free to withdraw your plea based upon the sentence that you receive, because it's within my discretion as part of this agreement.  Do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you have any questions about the terms of the plea agreement?

THE DEFENDANT:  No, ma'am.

Plea Hrg. Tr. at 9-11, ECF No. 4-2.

Respondents do not dispute that in Maryland, both now and at the time of the plea hearing, "an inmate serving a term of life imprisonment may only be paroled with the approval of the Governor." Md. Code Ann., Corr. Servs. § 7-301(d)(4) (LexisNexis 2017). Moreover, "an inmate who has been sentenced to life imprisonment is not eligible for parole consideration until the inmate has served 15 years or the equivalent of 15 years considering the allowances for diminution of the inmate's term of confinement." *Id.* § 7-301(d)(l). For purposes of parole eligibility, the statute makes no distinction based on whether any portion of a life sentence is suspended. *See*

3

*Hanson v. Hughes*, 447 A.2d 892, 895-96 (Md. Ct. Spec. App. 1982) (holding that "where the sentence imposed was life imprisonment, notwithstanding that execution of a part of that sentence has been suspended . . . the inmate 'has been sentenced to life imprisonment' and not merely to the unsuspended part of it which he must serve in confinement" (citations omitted)). Thus, the Circuit Court's statement of the law on this issue was incorrect.

At the conclusion of the plea hearing, Hurst entered a plea of guilty to attempted first-degree murder, and the Circuit Court found that the plea was made knowingly, intelligently, and voluntarily. At the sentencing hearing on April 30, 2015, on the attempted first-degree murder conviction, the Circuit Court imposed the recommended sentence of life imprisonment with all but 40 years suspended, and the State entered *nolle prosequi* on the remaining counts. Hurst did not file a direct appeal from his conviction or sentence.

## II.      State Post-Conviction Proceedings

On March 28, 2016, Hurst filed a self-represented Petition for Post-Conviction Relief ("the State Petition") pursuant to the Maryland Uniform Postconviction Procedure Act, Md. Code Ann., Crim. Proc. §§ 7-101–7-204 (LexisNexis 2018). In the State Petition, Hurst asserted that his trial counsel was ineffective for failing to demand a competency hearing. On September 6, 2016, Hurst, through newly-appointed counsel, filed a Supplemental Petition for Post-Conviction Relief ("the Supplemental State Petition"), claiming that: (1) trial counsel rendered ineffective assistance in failing to file a motion for a modification of the sentence after Hurst made a timely request; (2) Hurst's guilty plea was not entered into knowingly, intelligently, and voluntarily because the Circuit Court misadvised him that gubernatorial approval was not required for parole from a suspended life sentence; and (3) trial counsel rendered ineffective assistance by failing to correct

the Circuit Court's advisement regarding parole eligibility and the necessity of gubernatorial approval.

At a post-conviction hearing on January 13, 2017, Hurst withdrew the issue relating to a competency hearing that was asserted in the State Petition and expressly stated that he understood that he was "forever waiving the ability to raise" that issue "in any . . . other proceeding." Post-Conviction Hrg. Tr. at 11–12, ECF No. 6-1. The State conceded that Hurst was entitled to file a motion for a modification of the sentence. Hurst then proceeded only on the remaining two claims in the Supplemental State Petition.

At the post-conviction hearing, Hurst testified that his trial counsel never told him that the Circuit Court gave him incorrect advice on the record regarding the requirement of gubernatorial approval for parole. The State presented the testimony of Hurst's trial counsel, which included the following:

> Q:    And during your discussions with the Petitioner with respect to the plea offer, did you discuss parole eligibility?
>
> A:    Yes.
>
> Q:    During the context of your discussions, did anything about the Governor come up?
>
> A:    The only discussions we would have had about Gubernatorial approval for release would have been if he received a life sentence. I did not have any discussions with him or inform him if Gubernatorial approval was required if he was sentenced to a numerical sentence.
>
> Q:    And [were] there any conversations about parole eligibility as to a crime of violence?
>
> A:    Yes.
>
> Q:    And what was that?
>
> A:    That he would be required to serve half of the given time before he would be eligible for parole.

5

*Id.* at 23. On cross examination, trial counsel testified that at the time she represented Hurst, it was her understanding that an individual serving "a life sentence with a term of years suspended" would be eligible for parole after serving one-half of that sentence, without gubernatorial approval. *Id.* at 25-26. On redirect examination, she stated that she advised Hurst that gubernatorial approval for parole was required on a sentence of "straight life." *Id.* at 26-27.

At the end of the post-conviction hearing, the State noted that "Hurst never testified that the plea was not knowing, intelligent and voluntary," to which Hurst's counsel asserted that he was not required to "testify to that" because "[i]t's an issue that's from the record." *Id.* at 36. The judge responded by stating, "He gave me some facts." *Id.*

On March 13, 2017, the state post-conviction court issued an opinion granting in part and denying in part Hurst's Supplemental State Petition. Specifically, the court granted Hurst leave to file a belated motion for modification of the sentence, as conceded by the State, and denied relief on the claims relating to the guidance he received on parole eligibility. The court did not address the withdrawn claim from the State Petition.

As to Hurst's allegation that trial counsel was ineffective for failing to correct the Circuit Court's statement regarding parole eligibility, the court found that:

> At the post-conviction hearing, Trial Counsel testified that she believed the Court was correct in its assessment of parole eligibility at the plea hearing. Further, Trial Counsel testified that, while she explained the need for gubernatorial approval for parole from a life sentence to Petitioner in discussing the plea offer, she did not discuss whether it would be necessary in the event of a life sentence with a term of years suspended.

Post-Conviction Op. at 7, ECF No. 4-6. The court noted that under *Yoswick v. State*, 700 A.2d 251 (Md. 1995), "parole is a collateral consequence of a guilty plea, and therefore a defendant

need not be advised as to parole eligibility in order for his plea to be deemed knowing and voluntary." Post-Conviction Op. at 8. The court further stated that:

> Petitioner, as discussed above, cites *Winters* [*v. State*, 76 A.3d 986 (Md. 2013),] and *Morales* [*v. State*, 600 A.2d 851 (Md. 1992),] to argue that, while failure to inform a defendant of the parole ramifications of his guilty plea would not negate the voluntariness of the plea, providing a defendant with *erroneous* advice concerning parole would render the plea involuntary. However, the appellate courts have not, to date, applied the holdings in *Winters* and *Morales* to collateral consequences, nor to parole eligibility. To the contrary, *Yoswick*, the precedent discussing parole eligibility, makes clear that "parole eligibility is not a direct consequence of a plea and thus a defendant need not be informed of parole ramifications for a guilty plea to be voluntary."

The court therefore concluded that trial counsel's performance was "not deficient" and further found that, "even assuming, *arguendo*, that Trial Counsel's failure to correct the Court's misinformation was deficient, the Court cannot find that there was prejudice." Post-Conviction Op. at 4-6. Finding that the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), had not been met, the court denied the Supplemental State Petition on this claim.

On April 4, 2017, Hurst filed a self-represented application for leave to appeal from the denial of post-conviction relief, raising the single issue of whether trial counsel was ineffective for failing to advise him properly on the requirement of gubernatorial approval for parole. On April 14, 2017, Hurst supplemented his application by asserting in an additional filing that his post-conviction counsel was ineffective for failing to pursue the claim relating to a competency hearing that was asserted in the State Petition. On July 11, 2017, the Court of Special Appeals of Maryland summarily denied Hurst's application for leave to appeal, with the mandate issuing on August 11, 2017. *Hurst v. State*, No. 0317, Sept. Term 2017 (Md. Ct. Spec. App. July 11, 2017).

Hurst also filed a belated Motion for Modification of the Sentence as authorized, which the Circuit Court denied on July 14, 2017.

### III.    Procedural History

On August 22, 2017, Hurst filed his initial Petition for a Writ of Habeas Corpus in this Court, asserting the following claims:  (1) trial counsel was ineffective for failing to assert that Hurst was not criminally responsible; (2) trial counsel was ineffective for failing to correct the Circuit Court's statement regarding the requirement of gubernatorial approval for parole; and (3) post-conviction counsel rendered ineffective assistance by advising Hurst to withdraw his self-represented post-conviction claim relating to a competency hearing.  After Respondents filed an Answer, this Court appointed counsel to represent Hurst and file an Amended Petition.  On March 1, 2019, Hurst, through counsel, filed a Supplemental Petition for a Writ of Habeas Corpus, which Respondents opposed by filing on April 10, 2019 an Answer to the Supplemental Petition.

On July 24, 2019, Hurst filed a Motion to Stay and Hold Federal Habeas Corpus Proceedings in Abeyance pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), pending further litigation in the Maryland state courts.  Over Respondents' opposition, this Court granted the stay on January 23, 2020.

While the case was stayed in this Court, Hurst filed a Motion to Reopen Post-Conviction Case in the Circuit Court, alleging that due to the ineffective assistance of his post-conviction counsel, he had not presented certain arguments and evidence in support of his claim of ineffective assistance of trial counsel on the issue of gubernatorial approval for parole.  In support of that motion, Hurst submitted an affidavit, dated March 5, 2020, stating that: "If I had known that parole eligibility on a sentence of life suspend all but 40 years required gubernatorial approval I would not have pleaded guilty and instead I would have insisted on going to trial in my case."  Motion to Reopen at 22, ECF No. 45-1.

8

On May 22, 2020, the Circuit Court summarily denied the Motion to Reopen.  On June 16, 2020, Hurst timely filed an application for leave to appeal from the denial of the Motion to Reopen, which the Court of Special Appeals denied without analysis on September 9, 2020.  The parties then moved to lift the stay in this Court.

On October 6, 2020, this Court lifted the stay and directed Hurst to file an Amended Petition.  Hurst filed a Second Supplemental Petition on November 9, 2020, which is now fully briefed.

While this action has been pending, Walter West succeeded Respondent Ricky Foxwell as the Warden of ECI.  Under Federal Rule of Civil Procedure 25(d), the Court will substitute Warden West in place of former Warden Foxwell as Defendant in this case.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (stating that "in habeas challenges to present physical confinement . . . the proper respondent is the warden of the facility where the prisoner is being held").

## DISCUSSION

Hurst's Petition, consisting of the original petition and the two supplemental petitions, asserts three arguments for relief.  First, Hurst claims that trial counsel was ineffective for failing to assert that Hurst was not criminally responsible for his actions.  Second, Hurst contends that his post-conviction counsel rendered ineffective assistance by advising him to withdraw his claim of ineffective assistance of trial counsel based on her failure to demand a competency hearing.  Third, Hurst asserts, and Court-appointed habeas counsel reiterates, that his trial counsel was ineffective for providing erroneous advice, and failing to correct the Circuit Court's incorrect statement, about the requirement of gubernatorial approval for parole on any life sentence on a conviction for a crime under Maryland law.

In their Answer, Respondents argue that Hurst's first claim was not properly exhausted and is now procedurally defaulted. Respondents also assert that Hurst's second claim, of ineffective assistance of post-conviction counsel, is not a cognizable claim on a federal habeas petition. As to the third claim, Respondents argue that the Petition should be denied because the post-conviction court's decision was a reasonable application of federal law as determined by the United States Supreme Court.

## I.    Legal Standard

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2018). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct

governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

## II.   Procedural Default

Respondents argue that Hurst is procedurally barred from presenting his claim of ineffective assistance of trial counsel relating to the failure to assert that he was not criminally responsible because he did not exhaust this claim in state court and no longer has the right to do so. A petitioner seeking habeas relief in federal court generally must first exhaust the remedies available in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See* 28 U.S.C. § 2254(c). For a person convicted of a criminal offense in Maryland, exhaustion may be accomplished either on direct appeal or in post-conviction proceedings. To exhaust a claim on direct appeal in non-capital cases, a defendant must assert the claim in an appeal to the Court of Special Appeals of Maryland and then to the Court of Appeals of Maryland by way of a petition for a writ of certiorari. *See* Md. Code Ann., Cts. & Jud.

Proc. §§ 12-201, 12-301 (LexisNexis 2020).   To exhaust a claim through post-conviction proceedings, a defendant must assert the claim in a petition filed in the Circuit Court in which the inmate was convicted within 10 years of the date of sentencing. *See* Md. Code Ann., Crim. Proc. §§ 7-101–7-103.  After a decision on a post-conviction petition, further review is available through an application for leave to appeal filed with the Court of Special Appeals. *Id.* § 7-109.  If the Court of Special Appeals denies the application, there is no further review available and the claim is exhausted. Md. Code Ann., Cts. & Jud. Proc. § 12-202.

Here, Hurst did not file a direct appeal following his guilty plea.  Although in his initial petition for post-conviction relief, Hurst claimed that trial counsel was ineffective by failing to assert that he was not criminally responsible, such as by seeking a competency hearing, Hurst withdrew this claim during the post-conviction hearing.  Thus, Hurst failed to exhaust available state remedies relating to this matter. *See Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004) (declining to review a claim not raised in a petition for a writ of certiorari to the relevant state Supreme Court); *Williams v. Steiner*, 213 F. Supp. 600, 602 (D. Md. 1963) (finding that the petitioner failed to exhaust state remedies because he "did not raise the question in his post conviction proceeding").

When a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether by failing to raise the claim on direct appeal or in post-conviction proceedings, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991) (failure to note a timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise a claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (per curiam) (failure to raise a claim during post-conviction proceedings).  As relevant here, a procedural default occurs when a habeas petitioner fails to exhaust such available

state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998) (quoting *Coleman*, 501 U.S. at 735 n.1). At this point, the Circuit Court has denied Hurst's Motion to Reopen his post-conviction proceedings, and Hurst may not file a second and successive state petition for post-conviction relief. *See* Md. Code Ann., Crim. Proc. § 7-103(a). His first claim is therefore procedurally defaulted.

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that the failure to consider the claim on the merits would result in a miscarriage of justice, specifically, the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488). To demonstrate prejudice, the petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982); *see Murray*, 477 U.S. at 494. Under the second exception, a petitioner may obtain review of procedurally defaulted claims if the case "falls within the 'narrow class of cases . . . implicating a fundamental miscarriage of justice.'" *Schlup v. Delo*, 513 U.S. 298, 314-15 (1995) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). Such cases are generally limited to those for which the petitioner can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

Neither exception to the procedural default bar applies. As to cause and prejudice, nothing in the record suggests that Hurst's procedural default was due to external circumstances. Hurst claims that his post-conviction counsel coerced him to withdraw this claim during the post-conviction hearing, but the post-conviction transcript reflects that the judge warned Hurst that by withdrawing the issue, he was waiving the ability to raise it in any other proceeding, and he acknowledged that he understood. Hurst also does not assert that he is actually innocent. Where Hurst has provided no basis for excusing his procedural default, his claim of ineffective assistance of trial counsel for failing to assert that Hurst lacked criminal responsibility or should receive a competency hearing is not properly before this Court and will be dismissed.

## III.    Cognizability

Respondents argue that Hurst's claim of ineffective assistance of post-conviction counsel in causing him to withdraw one of his claims during the post-conviction hearing is not a cognizable claim in a federal habeas petition. For a claim of relief presented under § 2254 to be cognizable for review, the petitioner must assert a violation of federal law. *See Wilson v. Corcoran*, 562 U.S. 1, 1 (2010) ("Federal courts may not issue writs of habeas corpus to state prisoners whose confinement does not violate federal law."); *see also Young v. Warden, Md. Penitentiary*, 383 F. Supp. 986, 1009 (D. Md. 1974) ("It is axiomatic that only the violation or denial of some federal constitutional right, and not alleged errors in the interpretation or application of state law, can be the basis for federal habeas corpus relief."), *aff'd*, 532 F.2d 753 (4th Cir. 1976). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted).

There is no federal constitutional right to an attorney in state post-conviction proceedings. *Mackall v. Angelone*, 131 F.3d 442, 449 (4th Cir. 1997). Accordingly, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id.* at 448 (quoting *Coleman*, 501 U.S. at 752). Therefore, Hurst's claim that post-conviction counsel rendered ineffective assistance does not raise a cognizable claim for relief through a federal habeas petition.

## IV.    Gubernatorial Approval for Parole

Hurst's primary allegation is that his trial counsel was ineffective for providing erroneous advice, and failing to correct the Circuit Court's incorrect statement, about the requirement of gubernatorial approval for parole on any life sentence on a Maryland criminal conviction. Hurst presented this claim to the Circuit Court in his state petition for post-conviction relief, and it was denied on the merits.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and prejudice. *Id.* at 692. First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance

15

requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, the petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id.* at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

"Claims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). In the context of such a claim, to establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

## A.     Deficient Performance

The Supreme Court has recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). The requirement of effective assistance of counsel during plea negotiations is warranted because "plea bargains have become so central to the administration of the criminal justice system" that "the negotiation of a

plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." *Frye*, 566 U.S. at 143–44.

The state post-conviction court found no deficient performance because, based on *Yoswick v. State*, 700 A.2d 251 (Md. 1995), "parole eligibility is not a direct consequence of a plea and thus a defendant need not be informed of parole ramifications for a guilty plea to be voluntary." Post-Conviction Op. at 8 (quoting *Yoswick*, 700 A.2d at 257). In *Yoswick*, the Court of Appeals of Maryland affirmed the denial of a state petition for post-conviction relief where the defendant pleaded guilty to a life sentence, all but 40 years suspended, but he was not informed by the trial judge that he would not be eligible for parole until he served 15 years and that gubernatorial approval would be needed before he could receive parole, and his trial counsel allegedly misinformed him that he would be eligible after ten years. 700 A.2d at 254-55. The court held that the failure of the trial court or counsel to inform the defendant of the parole eligibility requirements did not render the guilty plea not knowingly and voluntarily given, but it did not decide whether trial counsel actually misinformed the defendant about the minimum time for parole eligibility and whether such conduct would constitute deficient performance. *Id.* at 259-60. Instead, it denied the ineffective assistance of counsel claim by concluding that prejudice had not been established. *Id.* at 260-61.

In relying on *Yoswick*, the state post-conviction court failed to appreciate that the error here was not the failure to advise Hurst of the parole eligibility requirements, but the erroneous statements of the law provided by the trial judge and trial counsel to Hurst. Unlike in *Yoswick*, the trial judge affirmatively and erroneously informed Hurst that he could be eligible for parole after 20 years and would not need gubernatorial approval to receive parole. Likewise, trial counsel acknowledged at the post-conviction hearing that she discussed parole eligibility with Hurst and

advised him that if he received a "straight life" sentence, he could not receive parole without gubernational approval, and that for other sentences he would be eligible after serving half of the imposed term of imprisonment, without noting any gubernatorial approval requirement. Post-Conviction Hrg. Tr. at 23. Thus, the present case deals not with the question of whether a defendant must be advised on parole eligibility before pleading guilty, but with the question of whether it is ineffective assistance of counsel to give or fail to correct erroneous advice on parole eligibility.

In *Strader v. Garrison*, 611 F.2d 61 (4th Cir. 1979), a prisoner sought federal habeas relief on the grounds that he received ineffective assistance of counsel when his trial counsel incorrectly advised him that if he pleaded guilty pursuant a plea agreement under which he would receive a 30-year sentence on an armed robbery conviction, his parole eligibility date, as calculated based on prior sentences he was already serving, would not change. *Id.* at 62-63. The district court had granted relief after finding that the provision of incorrect advice on Strader's parole eligibility date was deficient performance, and that where the parole eligibility date was "of great importance" to Strader, he would not have entered his guilty plea if he had been correctly advised about the effect of the new sentence upon that eligibility date. *Id.* at 63. On appeal, the Government argued that "the parole eligibility date is but a collateral consequence of the plea of which Strader need not have been informed." *Id.* The United States Court of Appeals for the Fourth Circuit rejected this argument, holding that "though parole eligibility dates are collateral consequences of the entry of a guilty plea of which a defendant need not be informed if he does not inquire, when he is grossly misinformed about it by his lawyer, and relies upon that misinformation, he is deprived of his constitutional right to counsel." *Id.* at 65. At least one other circuit has reached the same

conclusion. *See Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) ("We now hold that gross misadvice concerning parole eligibility can amount to ineffective assistance of counsel.").

Here, Hurst was not merely left unaware by the trial judge and trial counsel of the parole eligibility date that would apply if he pleaded guilty and the court imposed the recommended sentence of life imprisonment with all but 40 years suspended. At the plea hearing, the trial judge affirmatively misinformed Hurst that on such a sentence, there would be no need for gubernatorial approval in order to receive parole, and trial counsel not only failed to correct that error, but also provided her own affirmative, erroneous advice on parole eligibility. Considered as a whole, trial counsel's legal advice on parole eligibility clearly conveyed the inaccurate message to Hurst that he would not need gubernatorial approval for parole under the recommended sentence, particularly after trial counsel did not correct the trial judge's erroneous statement that such approval was not required. Where trial counsel gave affirmative advice on parole eligibility that "grossly misinformed" him on that issue, she provided deficient performance under federal law. *See Strader*, 611 F.3d at 63, 65.

In the face of controlling Fourth Circuit authority on this point, Respondents fall back on the point that to prevail on a federal habeas petition, a petitioner must show that the state post-conviction court's ruling was a "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Though the Court finds that the state post-conviction court's determination is contrary to clearly established, controlling federal law as set forth in *Strader*, it must consider whether there is Supreme Court precedent establishing the same principle. *See, e.g., Kernan v. Cuero*, 138 S. Ct. 4, 9 (2017) (stating that "circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court'" for purposes of 28 U.S.C. § 2254(d)(1)); *Marshall v.*

19

*Rogers*, 569 U.S. 58, 64 (2013) (holding that to meet the requirement of § 2254(d)(1), a court "may not canvass circuit decisions to determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to this Court, be accepted as correct"); *Bustos v. White*, 521 F.3d 321, 325 (4th Cir. 2008) ("[I]t is Supreme Court precedent, and not Fourth Circuit precedent, to which we look in applying [§ 2254(d)(1)].").

The Supreme Court was presented with this specific issue in *Hill v. Lockhart*, 474 U.S. 52 (1985), in which the petitioner, who pleaded guilty pursuant to a plea agreement to state charges of first-degree murder and theft of property, sought to overturn his conviction because his trial counsel had "misinformed" him that he would be eligible for parole after serving one-third of his sentence when, under state law, he was actually required to serve one-half of his sentence before becoming eligible for parole. *Id.* at 53-55. In affirming the denial of the habeas petition, the Supreme Court found it "unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel," because it concluded that regardless, the petitioner had failed to establish the requirement of prejudice. *Id.* at 60. Thus, in the one instance when it was presented with this issue, the Supreme Court did not clearly establish that affirmatively erroneous advice on parole eligibility can violate the Sixth Amendment. Notably, in the proceedings below, the United States Court of Appeals for the Eighth Circuit, contrary to the Fourth Circuit's ruling in *Strader*, had concluded that the provision of inaccurate information on parole ineligibility did not support a claim of ineffective assistance of counsel, illustrating a lack of uniformity on the issue among the lower courts. *Hill v. Lockhart*, 731 F.2d 568, 572 (8th Cir. 1984).

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), in which a criminal defendant alleged that he was given erroneous advice on whether he would be deported following his guilty plea, the

Supreme Court held that in advising a defendant on a guilty plea, an attorney's failure to advise, or provision of inaccurate advice, on the issue of deportation consequences can constitute ineffective assistance of counsel. *Id.* at 368-370, 374. This holding, however, was limited to this specific issue because of "the unique nature of deportation." *Id.* at 365.

Hurst argues that § 2254(d)(1) does not require a Supreme Court case that is "factually analogous in every respect," Reply at 6, ECF No. 49, and argues that the requirement of "clearly established" law from the Supreme Court is satisfied by *Lafler v. Cooper*, 566 U.S. 156 (2012), which generally held that defendants are entitled to effective assistance of counsel during plea negotiations and found deficiency when trial counsel wrongly advised the defendant that at trial the prosecution would not be able prove intent to murder because the victim had been shot below the waist. *Id.* at 161-62. Hurst also cites *Missouri v. Frye*, 566 U.S. 134 (2012), in which the Court held that defense counsel's failure to convey a favorable plea offer to the defendant could form the basis of a claim of ineffective assistance of counsel. *Id.* at 145. Although these cases arguably stand for a broad proposition that misadvice during the plea negotiation process can constitute ineffective assistance of counsel, the Court concludes that they do not clearly establish the legal principle at issue here.

First, in *Frye,* the Supreme Court specifically found the "the legal question presented is different from that in *Hill*," as *Frye* did not deal with "incorrect advice pertinent to the plea." *Id.* at 141. More broadly, the Supreme Court's 2013 holding that *Padilla*—a case involving inaccurate legal advice on deportation consequences—established a "new rule" that was not to be applied retroactively undermines the argument that a general rule that misadvice on collateral issues, such as parole eligibility, has existed all along. *Chaidez v. United States,* 568 U.S. 342, 354-58 (2013). Although *Chaidez* acknowledged that several federal circuits have applied a "separate rule" that

there can be ineffective assistance of counsel "for material misrepresentations," even on a collateral matter, it did not deem such a rule to be clearly established by Supreme Court precedent. *Id.* at 356.

Moreover, in *Chaidez*, the Court expressly stated that in *Hill*—a case involving an attorney who "misinformed" a defendant "about his parole eligibility"—it had "explicitly left open whether advice concerning a collateral consequence must satisfy Sixth Amendment requirements" and "avoid[ed]" the "categorical question" of "whether advice about parole (however inadequate and prejudicial) could possibly violate the Sixth Amendment." *Chaidez*, 568 U.S. at 349-350. Where the Supreme Court, in 2013, framed the issue of whether particular advice and misadvice about parole eligibility violates the Sixth Amendment as a discrete legal issue undecided following *Hill*, rather than answered by the general principles set forth in cases like *Lafler* and *Frye*, and no subsequent Supreme Court case has resolved that issue, this Court cannot fairly conclude that the affirmative misadvice on Hurst's parole eligibility violated clearly established Supreme Court precedent.

Thus, although the Court finds, under *Strader*, that Hurst received deficient performance under the Sixth Amendment when his trial counsel gave inaccurate advice on his eligibility for parole under the plea agreement, and failed to correct the inaccurate statement of the law given by the trial judge, it cannot conclude that the state post-conviction court's ruling "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The Court therefore cannot grant the Petition.

**B.     Prejudice**

Even if the deficiency prong were satisfied, Hurst would still have to meet the prejudice prong of the *Strickland* test. In its opinion, the state post-conviction court ruled, without analysis,

22

that it "cannot find that there was prejudice." Post-Conviction Op. at 8. As a threshold issue, Hurst argues that in light of the absence of any analysis, this Court should review the issue of prejudice *de novo*. The Fourth Circuit, however, has held that "[t]he standard of review set forth in § 2254(d) applies to *any* claim that was adjudicated on the merits in State court proceedings." *Lenz v. Washington*, 444 F.3d 295, 306 (4th Cir. 2006). There is no requirement "that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Unlike in *Wiggins v. Smith*, 539 U.S. 510 (2003), cited by Hurst, in which "neither of the state courts below reached" the prejudice prong of the *Strickland* analysis, *id.* at 534, in the present case the state post-conviction court explicitly ruled on the issue of prejudice. Because there was a "state court judgment on the merits," this Court cannot exercise *de novo* review. *See Lenz*, 444 F.3d at 302.

"When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017). Rather, to establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 1965 (quoting *Hill*, 474 U.S. at 59); *see also Lafler*, 566 U.S. at 163 ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). As part of this showing, the petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Lee*, 137 S. Ct. at 1968 (quoting *Padilla*, 559 U.S. at 372).

Here, at the post-conviction hearing, Hurst presented no direct evidence that had he received accurate legal advice on whether gubernatorial approval was required for parole

eligibility, he would have declined to plead guilty and proceeded to trial. Although in the Motion to Reopen, he submitted an affidavit in which he stated that he would have done so, the state post-conviction court denied the motion after receiving Hurst's exhibit. Without such a statement, the post-conviction court's finding of a lack of prejudice was reasonable. *See Hill*, 474 U.S. at 60 (finding no prejudice absent an assertion that the defendant would have pleaded not guilty and proceeded to trial had he not been misadvised on the issue of parole eligibility).

Hurst nevertheless argues that the record is sufficient to support a finding of a reasonable probability that Hurst would have rejected the plea and proceeded to trial. Based on the information he was given, Hurst could have reasonably concluded that under the recommended sentence of life imprisonment, all but 40 years suspended, he could potentially receive parole after 20 years, but in fact, with the gubernatorial approval requirement, he will likely have to serve 40 years before release. Thus, the inaccurate statement of the law on parole eligibility, which effectively provided for a 20-year difference in the amount of time that Hurst would necessarily have to serve, was significant. However, the record is too thin to support a conclusion that the state post-conviction court's conclusion of a lack of prejudice was unreasonable.

First, even if the Court could consider Hurst's affidavit, such a self-serving statement does not, by itself, conclusively establish prejudice. *See Christian v. Ballard*, 792 F.3d 427, 451 (4th Cir. 2015) (upholding a finding that a defendant's statement that he would not have pleaded guilty and would have proceeded to trial absent alleged ineffective assistance of counsel was "wholly incredible"). In *Lee*, in which the Supreme Court held that an non-citizen defendant was prejudiced by his defense counsel's erroneous advice that he would not be deported if he pleaded guilty, the Court did not rely only on a general statement by the defendant that with accurate advice he would have rejected the guilty plea and proceeded to trial. 137 S. Ct. at 1967-69. Rather, the

24

Court also relied on defense counsel's testimony that Lee "would have gone to trial if he had known about the deportation consequences," evidence that "Lee asked his attorney repeatedly whether there was any risk of deportation from the proceedings," and the fact that at the plea colloquy, when the judge warned Lee that a conviction could result in deportation, Lee consulted with his attorney and only pleaded guilty after he was told that the judge's statement was just a "standard warning." *Id.* at 1967-68. The assertions that Lee would have proceeded to trial if he faced deportation were further rendered credible by evidence that Lee came to the United States from South Korea at age 13, had resided in the United States for 35 years, owned his own restaurant business, and had never returned to South Korea. *Id.* at 1962-63. The Court therefore had "substantial and uncontroverted evidence" leading it to conclude that there was "no question" that "deportation was the determinative issue in Lee's decision whether to accept the plea deal." *Id.* at 1967, 1969. Here, no such additional evidence exists. *See Hill*, 474 U.S. at 60 (finding that a defendant given inaccurate legal advice on parole eligibility had not established prejudice when there were "no special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether to plead guilty").

Second, under the plea agreement, there was no guarantee that Hurst would receive the recommended sentence. The plea agreement provided, and the trial judge informed Hurst, that the judge could still impose a sentence of life imprisonment, with no part suspended, that would have effectively resulted in no likelihood of parole at all. Even with that possibility, Hurst agreed to plead guilty, illustrating that his decision to plead guilty was not dependent on an assurance that he would have to serve only 20 years before becoming eligible for parole or that he would not have to serve 40 years or more. *See Hill*, 474 U.S. at 53-54, 60 (finding that the petitioner had not

established prejudice arising from inaccurate advice on parole eligibility in a case in which the trial judge was not bound to accept the terms of the plea agreement).

Third, the evidence in the record, particularly the statement of the facts of the case presented at the guilty plea hearing, suggests that the case against Hurst was strong. The likelihood of success at trial is a relevant but non-dispositive consideration on the issue of prejudice, because "[a]s a general matter, it makes sense that a defendant who has no realistic defense to a charge supported by sufficient evidence will be unable to carry his burden of showing prejudice from accepting a guilty plea." *Lee*, 137 S. Ct. at 1966. According to that statement of facts, Hurst confessed to investigators that he assaulted the victim and participated in trying to cut off and burn off the victim's tattoo. His co-defendant also confessed, agreed to testify at trial against Hurst, and would have testified that Hurst assaulted the victim and tried to both cut off and burn off the victim's tattoo. Another witness would have testified that she heard Hurst threatening to remove the tattoo. The evidence would have also included forensic evidence that Hurst's DNA profile matched the DNA profile of evidence found on a pocket knife and lighter fluid bottle used in the attack. This record evidence weighs against a finding that Hurst necessarily would have proceeded to trial had he been accurately informed of the applicable law on parole eligibility, as a defendant facing likely conviction may rationally choose the benefits of a plea agreement, even one that is not entirely favorable, that "offers . . . a better resolution than would be likely after trial." *Lee*, 137 S. Ct. at 1966; *see Christian*, 792 F.3d at 452 (finding no prejudice based on alleged ineffective assistance of counsel during plea proceedings because "the record evidence of [the defendant's] guilt was overwhelming").

Under these circumstances, where the evidence does not unequivocally establish that Hurst necessarily would have proceeded to trial had he been properly advised, the Court does not

conclude that the state post-conviction court's general finding of a lack of prejudice was "an unreasonable application" of the *Strickland* standard on prejudice as applied to the context of advice on a guilty plea, or "an unreasonable determination of the facts" in light of the evidence presented at the post-conviction hearing. *See* 28 U.S.C. § 2254(d). The Court will therefore deny the Petition on this issue.

## VI.    Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under the controlling standard, a petitioner must show that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). For a certificate of appealability to issue, a petitioner need not prove "that some jurists would grant the petition for habeas corpus." *Id.* at 338.

As discussed above, as to ineffective assistance of counsel relating to the issue of gubernatorial approval for parole, controlling precedent in this Circuit establishes that there was deficient performance, and where the inaccurate advice arguably resulted in a 20-year difference in the expected period of incarceration, Hurst's claim of prejudice is not easily rejected. Though the prevailing legal standard causes this Court to deny Hurst's claim, the issues presented, particularly the question of whether it is or should be clearly established under federal law that affirmative misadvice on parole eligibility can support a claim of ineffective assistance of counsel, are "adequate to deserve encouragement to proceed further." *Id.* at 336. Therefore, the Court will

27

issue a certificate of appealability, limited to the issue of whether trial counsel rendered ineffective assistance of counsel by providing incorrect advice, and failing to correct the trial court's incorrect statement of the law, regarding the requirement of gubernatorial approval for parole on a life sentence on a Maryland state conviction.

## CONCLUSION

For the foregoing reasons, the Petition for a Writ of Habeas Corpus will be DISMISSED and DENIED.  The Court will issue a certificate of appealability.  A separate Order shall issue.

Date:  March 11, 2021

THEODORE D. CHUANG
United States District Judge